**Herbert CLAY, Petitioner-Appellant,**

**v.**

**Harold BLACK, Warden, Kentucky State Reformatory, Respondent-Appellee.**

**No. 71–1468.**

United States Court of Appeals,
Sixth Circuit.

Feb. 28, 1972.

Robert Allen Sedler, Lexington, Ky., Melvin L. Wulf, Lawrence G. Sager, American Civil Liberties Union Foundation, New York City, on brief, for petitioner-appellant.

Douglas E. Johnson, Sp. Asst. Atty. Gen., Frankfort, Ky., John B. Breckinridge, Atty. Gen., Commonwealth of Kentucky, Frankfort, Ky., on brief, for respondent-appellee.

Before MILLER and KENT, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

KENT, Circuit Judge.

This is an appeal from the District Court's denial of the appellant's applica-

tion for a writ of habeas corpus.[1] No evidentiary hearing was held but the District Judge had the benefit of the transcript of the appellant's trial in the State Court.

Briefly, the facts are as follows. The State presented an eye witness who testified that the appellant pulled the victim from the appellant's car, pushed him against a co-defendant, and shot the victim with a .45 caliber pistol. The appellant took the witness stand and testified that the decedent was in the appellant's car (a fact which was undisputed), and attempting to drive it away. The evidence indicated that the decedent was drunk at the time. The appellant testified that he pulled the decedent from appellant's car, that the decedent fell back into the car pulling the appellant with him. The appellant claimed that there was a "tussle" over the gun which the appellant was carrying in his belt, and that during the "tussle" the gun fired. After the appellant had testified, and before the conclusion of the trial, appointed defense counsel learned that the State had removed a portion of the upholstery from the seat of the appellant's car and had sent it to Washington where laboratory tests had demonstrated that blood on the front seat of the car was of the same type as that of the decedent. The report of the test was made available on request, but when defense counsel attempted to introduce the test in evidence the State's attorney objected and the objection was sustained, because of the failure of defense counsel to lay a proper foundation for the admission of the test. The only witnesses then available were the State Police officers who had removed a portion of the upholstery and mailed it to the Federal Bureau of Investigation laboratory in Washington. The facts relating to the taking of a portion of the upholstery and the subsequent test and results thereof were never presented to the jury but were presented to the court in the absence of the jury.

Appellant now claims that the State knowingly failed to inform defense counsel, prior to trial, of the fact that such a test had been made and deliberately prevented the jury from considering information which would have corroborated the appellant's claim as to the manner in which the shooting occurred and would have substantially impeached the testimony of the State's principal witness. At no time did defense counsel seek a continuance for the purpose of obtaining the necessary evidence to lay a foundation which would have permitted the introduction of the results of the test which revealed the blood on the upholstery.

The District Court reached the conclusion that Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the rule was laid down that suppression of evidence favorable to an accused by the prosecution may violate due process, was inapplicable because of the failure of defense counsel to seek a continuance. The District Court further concluded that there was nothing in the trial court record prior to the petitioner's testimony which would have put the State on notice that it was in possession of evidence which was in fact exculpatory. We are unable to form a conclusion, on the record as presented, as to when the Kentucky authorities became aware of the appellant's claim that the shooting occurred in the car as opposed to the State's theory that the shooting occurred outside the car. The appellant testified that when he learned that the decedent had been shot: "I said; 'the man stood a good chance getting shot with my gun,' so I turned to go to City Hall, which Mr. Belcher was there and he was awful nice and he brought me over to the county. I have been here ever since." (Trial Transcript p. 29). It would not be unreasonable to assume the possibility that the appellant explained to "Mr. Belcher", or to someone at the "county", his theory of the circumstances of the shooting, but

1. On March 28, 1968, in Harlan County, Kentucky, a jury convicted the appellant of willful murder and imposed a sentence of life imprisonment.

there is nothing in this record to show what information the police and the prosecutor had prior to the time the appellant testified.

We recognize that the facts of *Brady* vary substantially from the facts in this case. In *Brady* there was a request for the statements involved and the State deliberately withheld a statement which was corroboratory of Brady's testimony. Such is not the case before us, unless we conclude that the objections to the introduction of the test amounted to a deliberate withholding of evidence. To do so would require us to ignore all the rules of evidence, which we decline to do.

The Supreme Court, speaking through Mr. Justice Brennan in Giles v. Maryland, 386 U.S. 66, at page 74, 87 S. Ct. 793 at page 797, 17 L.Ed.2d 737 (1966), said:

"In Napue v. Illinois, *supra*, 360 U. S. 264, at 269, [79 S.Ct. 1173, 3 L.Ed. 2d 1217,] we held that a conviction must fall under the Fourteenth Amendment when the prosecution 'although not soliciting false evidence, allows it to go uncorrected when it appears,' even though the testimony may be relevant only to the credibility of a witness. We now have evidence before us, which neither Judge Moorman nor the Court of Appeals considered, which in our view justifies a remand to the Court of Appeals for its consideration whether that court should order an inquiry to determine whether such a situation arose at petitioners' trial."

Under that rule it may well be that the prosecution should have made available before trial the fact of the test and the results thereof, for use by the defense in examining the State's principal witness.

On this record we have insufficient facts to permit us to reach a conclusion as to whether the appellant's Constitutional Rights have been abridged. No evidentiary hearing was held and we cannot say that the findings of fact of the District Court, based upon the trial court record, are clearly erroneous. In other words, there are facts which were not before the District Court and are not before this Court. The Supreme Court of the United States in Townsend v. Sain, 372 U.S. 293 at pages 312, 313, 83 S.Ct. 745 at page 757, 9 L.Ed.2d 770 (1963), said:

"Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts."

And see also Greene v. Michigan Department of Corrections, 315 F.2d 546, 547 (6th Cir. 1963); Sharp v. State of Ohio, 314 F.2d 799 (6th Cir. 1963); Davis v. Johnson, 354 F.2d 689 (6th Cir. 1966).

Because the facts are not sufficiently set forth in the record before us we are compelled to remand the case to the District Court for an evidentiary hearing and for further findings of fact and for additional conclusions of law in the light of *Giles*. Upon remand it is anticipated that the District Court will determine whether or not this appellant made statements to the Kentucky authorities, at the time of his arrest, or at any time prior to trial, which informed them of his claim that the shooting took place within the car. The District Court should determine when the Kentucky authorities received the results of the tests made of the upholstery taken from the appellant's car and should also determine what conversations, if any, defense counsel had with the State authorities and whether any pertinent requests were made by appointed counsel relating to evidence in the State's possession prior to the trial of the case.

The judgment of the District Court is reversed and the case is remanded to that Court for the holding of an evidentiary hearing.